UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT GALEN,<br><br>                    Plaintiff,<br><br>          v.<br><br>REDFIN CORPORATION,<br><br>                    Defendant. | Case No. 14-cv-05229-TEH<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO ENFORCE LAW OF THE CASE AND GRANTING DEFENDANT'S MOTIONS TO COMPEL ARBITRATION** |
| IVONNETH CRUZ,<br><br>                    Plaintiff,<br><br>          v.<br><br>REDFIN CORPORATION,<br><br>                    Defendant. | Case No.  14-cv-05234-TEH |

This matter came before the Court on October 26, 2015 for a hearing on Plaintiff Galen's motion to enforce the law of the case and Defendant Redfin's motions to compel arbitration in both of the above-captioned cases.  After carefully reviewing the parties' written and oral arguments, the Court now DENIES Plaintiff Galen's motion to enforce the law of the case and GRANTS Defendant Redfin's motions to compel arbitration as to both Plaintiffs.

**BACKGROUND**

Plaintiff Scott Galen ("Galen") filed his case in Alameda County Superior Court on January 16, 2013.  Galen Compl. at 1 (Galen Docket No. 1-1).  Galen worked as a Field Agent for Defendant Redfin ("Redfin").  *Id.* ¶ 21.  Galen claims that he was misclassified as an independent contractor and accordingly denied employment benefits while he worked for Redfin.  *Id.* ¶ 2.

Galen signed a Field Agent Independent Contractor Agreement ("Agreement") to

1   work as a Field Agent for Redfin on August 26, 2009.  Ex. B to Arena Decl. at 4 (Galen

2   Docket No. 24-2).  The Agreement contained a binding arbitration clause, which provided:

3

4   > In the event that any disputes arise regarding the interpretation
    > or enforcement of this Agreement, such disputes shall be
    > resolved as follows:

5   > [. . .]

6   > c.  All disputes among the parties arising out of or related to
    > this Agreement which have not been settled by mediation shall
    > be resolved by binding arbitration within the State of

7   > Washington. . . .   Any arbitration shall be conducted in
    > accordance with the rules of the American Arbitration

8   > Association then in effect. . . .

9   *Id.* at 6.

10          In April 2013, while the case was still in state court, Redfin moved to compel

11  arbitration.  Def.'s State Court Mot. (Galen Docket No. 7-6).  The Superior Court denied

12  the motion.  May 8, 2013 Sup. Ct. Order at 3 (Galen Docket No. 7-13).  Redfin appealed,

13  and the California Court of Appeal reversed.  July 21, 2014 Cal. Ct. App. Order at 1

14  (Galen Docket No. 7-50).  Galen petitioned the California Supreme Court for review,

15  which was granted on November 12, 2014.  Nov. 12, 2014 Cal. Order at 3 (Galen Docket

16  No. 7-57).  Redfin removed Galen's case to federal court on November 25, 2014.  Notice

17  of Removal at 1 (Galen Docket No. 1).  Redfin stated that it first became aware that the

18  case was removable upon Galen's submission in October of 2014 of a mediation brief

19  including a damages calculation of more than $25 million, which put the case above the $5

20  million threshold for federal jurisdiction under the Class Action Fairness Act.  *Id.* ¶¶ 6, 8.

21          Plaintiff Ivonneth Cruz ("Cruz") filed her case in Alameda County Superior Court

22  on December 24, 2013.  Cruz Compl. at 1 (Cruz Docket No. 1-1).  Cruz also worked as a

23  Field Agent for Redfin.  *Id.* ¶ 4.  She signed an Agreement on February 17, 2010, which

24  contained an arbitration clause identical to that in Galen's Agreement. [1]  Ex. A to Fenn

25

26  _____

27  [1] The Court GRANTS Defendant's request for judicial notice, and thus judicially notices
    Galen's Agreement, which was expressly referenced in Galen's complaint and papers.
    Galen Mot. to Compel at 3 n.2; *see Kenneally v. Bank of Nova Scotia*, 711 F. Supp. 2d

28  1174, 1182 (S.D. Cal. 2010) (taking judicial notice of purchase agreement referenced in
    operative complaint).

United States District Court
Northern District of California

1    Decl. at 5 (Cruz Docket No. 19-1).  Redfin demanded that Cruz submit to arbitration, but

2    never filed a motion to compel arbitration while the case was in state court.  Exs. E & F to

3    Arena Decl. (Cruz Docket No. 19-3); Arena Decl. ¶¶ 6-7 (Cruz Docket No. 19-2).  Redfin

4    removed Cruz's case to federal court on November 26, 2014 – the day after Galen's case

5    was removed.  Notice of Removal at 1 (Cruz Docket No. 1).  The damages calculation in

6    the Galen case was used as the basis for removal of Cruz's case.  *Id.* ¶ 6.

7         On Galen's administrative motion under Civil Local Rule 3-12, the Court related

8    the cases on March 3, 2015.  Order Relating Cases (Galen Docket No. 17; Cruz Docket

9    No. 14).  However, as of the date of this Order, no party in either case has moved for

10   consolidation under Federal Rule of Civil Procedure 42, and the Court has not consolidated

11   the cases *sua sponte*.

12        After a case management conference held in March of 2015, the parties filed cross-

13   motions regarding submission of the cases to binding arbitration.  March 30, 2015 Minutes

14   (Galen Docket No. 21; Cruz Docket No. 17).  Redfin filed motions to compel arbitration in

15   both cases.  Galen Mot. to Compel (Galen Docket No. 24); Cruz Mot. to Compel (Cruz

16   Docket No. 19).  Galen filed a motion to enforce the law of the case, or, in the alternative,

17   to stay the case pending the California Supreme Court's decision in *Sanchez v. Valencia*

18   *Holding Co.*, which addresses the standard of unconscionability in California contract law.

19   Galen Mot. to Stay at 1 (Galen Docket No. 23).

20        The Court stayed both cases on May 13, 2015, in order to await the guidance of the

21   California Supreme Court.  Orders Staying Cases at 1 (Galen Docket No. 30; Cruz Docket

22   No. 22).  The California Supreme Court announced its decision in *Sanchez* on August 3,

23   2015.  *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899 (2015).  The parties

24   submitted joint supplemental briefs regarding the effect of *Sanchez* on August 17, 2015.

25   (Galen Docket No. 31).

26        After Redfin's removal of both cases, on September 30, 2015, the California

27   Supreme Court dismissed the petition in a one-sentence dismissal, which stated: "Review

28   in the above-captioned matter, which was granted and held for *Sanchez v. Valencia*

United States District Court
Northern District of California

3

1    *Holding Co. LLC* (2015) 61 Cal. 4th 899, is hereby dismissed." Cal. Supreme Court

2    Dismissal (Galen Docket No. 37-4). Pursuant to California Rules of Court 8.528(b), the

3    California Court of Appeal decision became final, and the clerk of court filed a remittitur

4    to that effect on October 2, 2015. CA1 Remittitur (Galen Docket No. 37-5).

5            Believing the California Supreme Court's dismissal to be in error, Galen's counsel

6    wrote a letter to the clerk of court, which was received on October 13, 2015. Letter (Galen

7    Docket No. 38-1). On October 28, 2015, the California Supreme Court filed an order

8    vacating its prior dismissal, stating: "The order dismissing review in the above-entitled

9    matter, filed on September 30, 2015, is vacated nunc pro tunc." Order Vacating Dismissal

10   (Galen Docket No. 40).

11

12   **LEGAL STANDARD**

13

14   **I.      The Law of the Case Doctrine**

15           The law of the case doctrine is a discretionary principle employed by courts to

16   maintain consistency and efficiency in resolving litigation. *Ingle v. Circuit City*, 408 F.3d

17   592, 594 (9th Cir. 2005); *see generally* 18B Charles Alan Wright & Arthur R. Miller,

18   Federal Practice and Procedure § 4478 (2d ed. 2015). "As most commonly defined, the

19   doctrine posits that when a court decides upon a rule of law, that decision should continue

20   to govern the same issues in subsequent stages in the same case." *Arizona v. California*,

21   460 U.S. 605, 618 (1983).

22           Under the law of the case doctrine, courts generally do not reconsider an issue that

23   has already been decided in the case unless one or more of the following factors are

24   present: "(1) the first decision was clearly erroneous; (2) an intervening change in the law

25   has occurred; (3) the evidence on remand is substantially different; (4) other changed

26   circumstances exist; or (5) a manifest injustice would otherwise result." *United States v.*

27   *Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   **II.     The Federal Arbitration Act**

2           The Federal Arbitration Act ("FAA") applies to arbitration agreements in any

3   contract affecting interstate commerce.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S.

4   105, 119 (2001); 9 U.S.C. § 2.  Section 4 of the FAA ensures that "private agreements to

5   arbitrate are enforced according to their terms."  *Volt Info. Scis., Inc. v. Bd. of Trs. of*

6   *Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).  Accordingly, a party to an

7   arbitration agreement can petition a United States District Court for an order directing that

8   "arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  In

9   addition, the FAA contains a mandatory stay provision.  *Id.* § 3.

10          Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable

11  save upon such grounds as exist at law or in equity for the revocation of any contract."  9

12  U.S.C. § 2.  "[T]he FAA's purpose is to give preference (instead of mere equality) to

13  arbitration provisions."  *Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151,

14  1160 (9th Cir. 2013).  Nonetheless, arbitration "is a matter of consent, not coercion."  *Volt*,

15  489 U.S. at 479.  In accordance with this principle, the Supreme Court has held that parties

16  may agree to limit the issues subject to arbitration, and to arbitrate according to specific

17  rules.  *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628

18  (1985); *Volt*, 489 U.S. at 479.

19          "[T]he party resisting arbitration bears the burden of proving that the claims at issue

20  are unsuitable for arbitration."  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91

21  (2000) (internal citations omitted).  A court must defer to arbitration "unless it may be said

22  with positive assurance that the arbitration clause is not susceptible of an interpretation that

23  covers the asserted dispute," and "doubts should be resolved in favor of coverage."  *AT&T*

24  *Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

25

26  ///

27  ///

28  ///

United States District Court
Northern District of California

1   **DISCUSSION**

2

3   **I.      The Law of the Case Doctrine Does Not Apply**

4          The first issue the Court must decide is whether Galen may benefit from the

5   Superior Court's favorable decision on Redfin's first motion to compel arbitration by way

6   of the law of the case doctrine, or instead, whether the Court should consider Redfin's

7   renewed motion.

8          It is occasionally stated that entry of final judgment is required to sustain the law of

9   the case.  *United States v. United States Smelting Ref. & Mining Co.*, 339 U.S. 186, 198

10  (1950); *see also* Fed. R. Civ. P. 54(b).  More recently, the Ninth Circuit stated that "the

11  law-of-the-case doctrine does not apply 'to circumstances where a district court seeks to

12  reconsider an order over which it has not been divested of jurisdiction.'"  *Robins v.*

13  *Spokeo, Inc.*, 742 F.3d 409, 411 (9th Cir. 2014) (quoting *United States v. Smith*, 389 F.3d

14  944, 949 (9th Cir. 2004)).  However, "[t]hat view, baldly expressed, may generate some

15  confusion," because the law of the case doctrine is a guide to discretion, not a strict limit

16  on authority.  Federal Practice & Procedure § 4478.1; *Arizona*, 460 U.S. at 618.  Instead,

17  the general practice is for courts to apply the law of the case doctrine to *issues once they*

18  *are decided* in the case, rather than freely reconsidering such issues until final judgment is

19  entered.  *See* Federal Practice & Procedure § 4478.5 ("[T]he concept [that only a final

20  ruling supports law of the case] is a functional one that seeks to identify a determination

21  intended to put a matter at rest."); *but see id.* § 4478.1 ("It is essential, however, to

22  remember that reconsideration often is better deserved, and more important, while an

23  action wends its way toward the first final judgment in the trial court.").

24         It is an abuse of discretion not to enforce the law of the case unless at least one of

25  five factors are present: "(1) the first decision was clearly erroneous; (2) an intervening

26  change in the law has occurred; (3) the evidence on remand is substantially different; (4)

27  other changed circumstances exist; or (5) a manifest injustice would otherwise result."

28  *Alexander*, 106 F.3d at 876.  It is also an abuse of discretion to *apply* the law of the case

6

1    doctrine where one the five factors above is present.  *Ingle*, 408 F.3d at 594.

2           "Changed circumstances" are most likely found where an event subsequent to the

3    first order undermines the rationale for that order.  In *Alexander*, the Ninth Circuit held

4    that a mistrial due to a hung jury was not a "changed circumstance" justifying

5    reconsideration of an order denying a motion to suppress evidence, because the neither the

6    fact of a mistrial nor the testimony from the trial undermined the basis for the prior order.

7    106 F.3d at 876-77.  However, in *Rodriguez v. SGLC, Inc.*, the District Court found

8    "changed circumstances" where a prior order denied a motion for representative testimony

9    because the plaintiffs were proceeding collectively, but the court had subsequently severed

10   the case into individual actions.  No. 08-CV-1971 MCE, 2013 WL 6844549, at *3 (E.D.

11   Cal. Dec. 24, 2013); *see also Pinnacle Armor, Inc. v. United States*, No. 07-CV-1655 LJO,

12   2012 WL 2994111, at *9 (E.D. Cal. July 20, 2012) (administrative agency's clarification

13   was changed circumstance); *United States v. Hiley*, No. 09-CR-121 CBM, 2011 WL

14   6778766, at *5 (C.D. Cal. Dec. 26, 2011) (trial testimony undermining Officer's

15   credibility, rather than mere mistrial, was changed circumstance).

16          "Manifest injustice" is a catch-all factor to capture situations that strike the court as

17   unfair.  See, e.g., *United States v. Norita*, 708 F. Supp. 2d 1043, 1054 (D. N. Mar. I. 2010)

18   (manifest injustice to order production of DEA's field manual to criminal defendant, where

19   prior court order of production was "clearly erroneous" and the manual was not material to

20   the defense); *cf. Alexander*, 106 F.3d at 877 (not manifest injustice to keep defendant's

21   confession suppressed without evidentiary hearing because multiple sources of evidence

22   justified suppression).

23          The procedural context of Galen's case is governed by two notable statutory

24   provisions.  First, "[w]henever any action is removed from a State court to a district court

25   of the United States . . . [a]ll injunctions, orders, and other proceedings had in such action

26   prior to its removal shall remain in full force and effect until dissolved or modified by the

27   district court."  28 U.S.C. § 1450.  Second, when the Supreme Court of California grants

28   review of an opinion of the Court of Appeal, the lower court's opinion is automatically

United States District Court
Northern District of California

7

1    depublished.  Cal. R. Ct. 8.1105(e)(1).

2           Galen argues that the law of the case is the Alameda Superior Court's decision,

3    which denied Redfin's motion to compel arbitration.  Galen Mot. to Stay at 5 (Docket No.

4    23).  Galen contends that according to Section 1450, upon removal the procedural posture

5    of the case was frozen and all orders remained in effect; so because the Court of Appeal

6    decision reversing the Superior Court had been depublished, the law of the case was the

7    Superior Court decision.  *Id.*  Galen further argues that Redfin's motion, if allowed,

8    effectively uses removal to avoid an adverse ruling and get another bite at the arbitration

9    apple – and have another chance at an issue that was already litigated.  *Id.* at 10.

10          Redfin argues that because the Superior Court's ruling was not final, it is not the

11   law of the case.  Opp'n to Stay Mot. at 7 (Docket No. 25).  Redfin points out that removal

12   was timely and of right, and if the Court follows Galen's law of the case theory, Redfin

13   would have to forego its removal right in order to wait on the California Supreme Court's

14   ruling.  *Id.* at 10.  Furthermore, Redfin contends that Galen's motion is a thinly veiled

15   request for an advisory opinion.  *Id.* at 11.

16          The Court, within its discretion, declines to apply the law of the case doctrine, and

17   instead will proceed to the merits of Redfin's motions to compel arbitration.  The

18   California Court of Appeal's reversal of the Superior Court's order constitutes changed

19   circumstances, because the appellate court's reasoning clearly undermined the rationale of

20   the original order; the fact that the Court of Appeal's decision was depublished does not

21   change that fact.  It would constitute manifest injustice to deny Redfin its right to remove

22   an otherwise removable case in order to ensure that its motion is heard.  Furthermore, it

23   would be manifestly unjust to Redfin to treat the Superior Court's order as final even

24   though it had been reversed and was still under review in the state courts.  The Court notes

25   that this decision is confined to the strange procedural posture of this case.

26

27   ///

28   ///

8

United States District Court
Northern District of California

1   **II.     The Parties, Through Agreement, Delegated Arbitrability to the Arbitrator**

2           The next question is whether the Court should even decide the question of

3   arbitrability, or rather whether the Agreement delegated the arbitrability determination to

4   the arbitrator.

5           "Unless the parties clearly and unmistakably provide otherwise, the question of

6   whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."

7   *AT&T v. Commc'ns Workers*, 475 U.S. at 649.  "In other words, there is a presumption that

8   courts will decide which issues are arbitrable; the federal policy in favor of arbitration does

9   not extend to deciding questions of arbitrability."  *Oracle Am., Inc. v. Myriad Group A.G.*,

10  724 F.3d 1069, 1072 (9th Cir. 2013).

11          "There are two prerequisites for a delegation clause to be effective.  First, the

12  language of the clause must be clear and unmistakable.  Second, the delegation must not be

13  revocable under state contract defenses such as fraud, duress, or unconscionability."  *Tiri*

14  *v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 242 (2014); *see also Rent-A-Center, W.,*

15  *Inc. v. Jackson*, 561 U.S. 63, 68, 70 n.1 (2010); *Mohamed v. Uber Tech., Inc.*, No. 14-

16  5200-EMC, 2015 WL 3749716, at *5 (N.D. Cal. June 9, 2015).

17          In evaluating the delegation question, some courts have employed a two-part test

18  that comes from a case out of the Federal Circuit, *Qualcomm Inc. v. Nokia Corporation*,

19  466 F.3d 1366 (Fed. Cir. 2006).  Under this test, if the court finds that the parties did not

20  "clearly and unmistakably intend to delegate arbitrability decisions to an arbitrator,

21  . . . [then] the court should undertake a full arbitrability inquiry in order to be 'satisfied'

22  that the issue involved is referable to arbitration."  *Id.* at 1371.  "If, however, the court

23  concludes that the parties to the agreement did clearly and unmistakably intend to delegate

24  the power to decide arbitrability to an arbitrator, then the court should perform a second,

25  more limited inquiry to determine whether the assertion of arbitrability is 'wholly

26  groundless.'"  *Id.* (citing *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547,

27  553 (2004)).  Many judges in the Northern District of California have adopted the "wholly

28  groundless" test.  E.g., *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 971 (N.D. Cal.

United States District Court
Northern District of California

9

United States District Court
Northern District of California

1    2015); *Nitsch v. DreamWorks Animation SKG Inc.*, No. 12-04062-LHK, 2015 WL

2    1886882, at *8-10 (N.D. Cal. Apr. 24, 2015); *Bernal v. Sw. & Pac. Specialty Fin., Inc.*,

3    No. 12-5797-SBA, 2014 WL 1868787, at *3-5 (N.D. Cal. May 7, 2014); *Matson*

4    *Terminals, Inc. v. Ins. Co. of N. Am.*, 13-5571-LB, 2014 WL 1219007, at *4 (N.D. Cal.

5    Mar. 21, 2014).

6              Even if the parties clearly and unmistakably provide that the question of

7    arbitrability should be delegated to the arbitrator, the delegation clause may be

8    unenforceable if it is unconscionable. *Mohamed*, 2015 WL 3749716, at *12-17. "'To

9    immunize an arbitration agreement from judicial challenge . . . would be to elevate it over

10   other forms of contract.'" *Rent-A-Center*, 561 U.S. at 71 (quoting *Prima Paint Corp. v.*

11   *Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). The Court has not found any

12   authority that explicitly considered how the "wholly groundless" standard can be

13   reconciled with an unconscionability attack on the delegation provision. Nonetheless, the

14   Court concludes that the unconscionability attack, if successful, would trump the "wholly

15   groundless" standard, because the unconscionability attack would render the delegation

16   provision unenforceable. This interpretation is the best way to give effect to the Supreme

17   Court's admonition in *Rent-A-Center* that arbitration clauses should not be immunized

18   from judicial attack. *See Rent-A-Center*, 561 U.S. at 71.

19

20        **A.     The Incorporation of the AAA Rules Clearly and Unmistakably**

21               **Delegated the Question of Arbitrability**

22             The incorporation of professional arbitration rules that delegate the questions of

23   arbitrability can constitute "clear and unmistakable" evidence that the parties intended to

24   delegate that question. *Oracle Am.*, 724 F.3d at 1073-75. In *Oracle America*, the Court

25   noted that "[v]irtually every circuit to have considered the issue has determined that

26   incorporation of the American Arbitration Association's (AAA) arbitration rules

27   constitutes clear and unmistakable evidence that the parties agreed to arbitrate

28   arbitrability." *Id.* at 1074. Since *Oracle*, the Ninth Circuit has explicitly held that

10

1   incorporation of the AAA rules can constitute clear and unmistakable delegation of the

2   arbitrability question.  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("Now

3   that the question regarding incorporation of the AAA rules is squarely before us, we hold

4   that incorporation of the AAA rules constitutes clear and unmistakable evidence that

5   contracting parties agreed to arbitrate arbitrability.").  Notably, the Ninth Circuit explicitly

6   limited its holding in *Brennan* to the facts of the case, which involved an arbitration

7   agreement "between sophisticated parties."  *Id.* at 1131 (quoting *Oracle*, 724 F.3d at 1075

8   & n.2) (internal quotation marks omitted).

9           A reference to the AAA rules can be sufficient to constitute clear and unmistakable

10   intent to delegate; an actual copy of the rules does not need to be provided.  *See Bernal*,

11   2014 WL 1868787, at *4; *Kimble v. Rhodes Coll., Inc.*, No. 10-CV-5786 EMC, 2011 WL

12   2175249, at *2 (N.D. Cal. June 2, 2011); *Clarium Capital Mgmt LLC v. Choudhury*, 2009

13   WL 331588, at *5.  However, a lack of clarity in the delegation clause, or inconsistencies

14   between the delegation clause and the rest of the contract, can result in a finding that the

15   question of arbitrability was not clearly and unmistakably delegated.  *Mohamed*, 2015 WL

16   3749716, at *8-11 (no clear delegation where contract said both (1) all disputes would be

17   resolved by California courts; *and* (2) all disputes, including arbitrability, would be

18   delegated to an arbitrator).

19           There is more ambiguity in this case than in other arbitration delegation cases.  For

20   example, in *Zenelaj*, the contract at issue specified that the *AAA Commercial Rules* were to

21   be used, whereas here it was left ambiguous which set of rules would apply – AAA

22   Commercial Rules or AAA Labor and Employment Rules.  *Compare* 2015 WL 971320, at

23   *2, *with* Ex. B to Arena Decl. at 4.  However, both sets of rules include identical

24   delegation provisions, so this alone would not defeat the parties' clear intent.  *Compare*

25   AAA Commercial Rule 7 (June 1, 2009), *with* AAA Labor & Emp. Rule 6 (June 1, 2009).

26   Moreover, the Plaintiffs at issue here are real estate agents, who are required to obtain a

27   license in order to practice their profession and therefore have at least a modicum of

28   sophistication.  *See* Cal. Bus. & Prof. Code § 10130.

United States District Court
Northern District of California

11

1    In light of the relevant case law and facts, the Court finds that the parties clearly and

2    unmistakably delegated the question of arbitrability to the arbitrator.

3

4    **B.    The Delegation Provision may be Unconscionable, but the Problematic**

5    **Provisions are Severable**

6    In addition to challenging a delegation provision as unclear, a party can challenge it

7    under generally applicable principles of contract law.  *Rent-A-Center*, 561 U.S. at 71-74; 9

8    U.S.C. § 2.  Because an arbitration agreement is severable from the contract as a whole,

9    and a delegation provision is severable from an arbitration agreement, the party must

10   specifically attack the delegation provision, even where the grounds for unconscionability

11   could apply to the arbitration agreement or contract as a whole.  *Rent-A-Center*, 561 U.S.

12   at 71-74.

13   "A federal court sitting in diversity applies the forum state's choice of law rules."

14   *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir.

15   2010).  Therefore, as the lawsuit at bar was filed in California, the Court applies

16   California's choice of law rules to decide what law applies to the unconscionability issue.

17   The Federal Arbitration Act ("FAA") preempts generally applicable state law

18   contract rules that disproportionately impact arbitration agreements.  *AT&T Mobility LLC*

19   *v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 1747 (2011).  However, this does not mean

20   that a generally applicable rule, such as California's "unconscionability" rule, is preempted

21   whenever it is applied to an arbitration agreement; rather, "courts must place arbitration

22   agreements on an equal footing with other contracts."  *Id.* at 1745.  California's generally

23   applicable rule against unconscionable contracts is not necessarily preempted by the FAA,

24   but it could be if the specific application of the rule disproportionately impacts arbitration.

25   *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 926 (9th Cir. 2013); *see also Sonic-*

26   *Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1142 (2013) ("We begin by noting that

27   after *Concepcion*, unconscionability remains a valid defense to a petition to compel

28   arbitration.").

United States District Court
Northern District of California

United States District Court
Northern District of California

1    While this Court stayed this case pending the outcome of *Sanchez v. Valencia*

2  *Holding Co., LLC*, the *Sanchez* case itself did not change California unconscionability law

3  in any meaningful way.  Under California law, "unconscionability has both a 'procedural'

4  and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to

5  unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Armendariz*

6  *v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000) (citation omitted);

7  *Sanchez*, 61 Cal. 4th at 820.  Both elements must be present, but courts employ a "sliding

8  scale," whereby a stronger showing on one may make up for a weaker showing on the

9  other. *Id.*

10    "The threshold inquiry in California's unconscionability analysis is 'whether the

11  arbitration agreement is adhesive.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281

12  (9th Cir. 2006) (quoting *Armendariz*, 24 Cal. 4th at 113).  Procedural unconscionability is

13  shown where "the arbitration provision was presented on a take-it-or-leave-it basis and [] it

14  was oppressive due to 'an inequality of bargaining power that result[ed] in no real

15  negotiation and an absence of meaningful choice.'" *Nagrampa*, 469 F.3d at 1281 (quoting

16  *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)).

17    Neither the availability of substitute employment, nor the sophistication of a party,

18  can, by themselves, defeat a claim of procedural unconscionability.  *Nagrampa*, 469 F.3d

19  at 1283.  However, where an employee has a meaningful opportunity to opt-out of the

20  allegedly unconscionable provision and still maintain employment, the procedural

21  unconscionability is minimized.  *Davis v. O'Melveney & Myers*, 485 F.3d 1066, 1073 (9th

22  Cir. 2007), abrogated in part on other grounds by *Concepcion*, 131 S. Ct. 1740, as

23  recognized in *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 933 & n.2 (9th Cir. 2013).

24    Substantive unconscionability is shown where a provision produces "overly harsh"

25  or "one-sided" results.  *Armendariz*, 24 Cal. 4th at 114; *Sanchez*, 61 Cal. 4th at 821.  In the

26  context of an arbitration agreement, a "fee-splitting provision is not per se substantively

27  unconscionable under California law . . . [although] to the extent the fee-splitting provision

28  would impede [a plaintiff] from vindicating statutory rights, it would be unenforceable and

13

1    illegal under California law as contrary to public policy." *Nagrampa*, 469 F.3d at 1285.

2    The use of a remote forum may also render an arbitration clause substantively

3    unconscionable, if the difference in the parties' resources would "effectively preclude" a

4    party from litigating its claims. *Id.* at 1287-90.

5            An unconscionable provision of an arbitration agreement may be severed to retain

6    the remaining provisions. *Rent-A-Center*, 561 U.S. at 71-72.  However, under California

7    law, an arbitration agreement that is "permeated" or "tainted" with multiple

8    unconscionable provisions may not be able to be severed without reforming the contract, in

9    which case such an agreement is unenforceable. *Armendariz*, 24 Cal. 4th at 123-25.

10           Here, both Plaintiffs argue that the delegation clause itself is unconscionable.  Galen

11   Opp'n to Compel Mot. at 6-13; Cruz Opp'n to Compel Mot. at 4.  The Court initially finds

12   that the delegation provision in both cases were procedurally and substantively

13   unconscionable, but the substantively unconscionable provisions can be severed.

### 1.    *Procedural unconscionability*

15           Focusing first on procedural unconscionability, it is undisputed that Redfin prepared

16   the Agreements (including the incorporated delegation provision) and presented them to

17   Plaintiffs.  Galen Decl. ¶ 2-3.  Plaintiffs allege that the provision was presented on a take-

18   it-or-leave-it basis.  Galen Opp'n to Compel Mot. at 7; Cruz Opp'n to Compel Mot. at 4;

19   *see also* Galen Reply to Compel Mot. at 11-14 (Galen Docket No. 29); Cruz Reply to

20   Compel Mot. at 6-9.  Redfin argues that Plaintiffs were not given a deadline to sign the

21   agreement, and that they could have negotiated the arbitration agreement, but neither

22   Plaintiff did.  Plaintiffs' counsel pointed out at oral argument that while Redfin did not

23   give a deadline, Plaintiffs still felt pressure to sign quickly without reading because they

24   would be unable to start working until the agreement was signed.  Redfin contended that

25   there was no way of knowing what would have happened has Plaintiffs rejected the

26   arbitration clause, but stated that other agents at the company had negotiated that provision

27   of their agreements.

28           Redfin also failed to attach the AAA rules, or even specify exactly which rules were

14

United States District Court
Northern District of California

1   referenced; therefore Plaintiffs were required to go to a secondary source to find these

2   terms, which Plaintiffs argue constituted unfair surprise.  Galen Decl. ¶ 2; Ex. B to Galen

3   Arena Decl. at 6; Ex. A to Fenn Decl. at 5.  Redfin argues that even though the rules were

4   not attached, both the AAA Labor and Employment Rules and the AAA Commercial

5   Rules contain the same arbitration terms.  Courts in this district have found that the failure

6   to attach a copy of the rules, so long as the rules are referenced, is not fatal.  *See, e.g.,*

7   *Howard v. Octagon, Inc.*, No. 13-1111-PJH, 2013 WL 5122191 at *15 (N.D. Cal. Sept 13,

8   2013); *Sullivan v. Lumber Liquidators*, Inc., No. 10-1447-MMC (June 2, 2010).

9   　　　　The Court finds that Redfin had greater bargaining strength than the Plaintiffs, and

10   that the Agreement, including the arbitration provision and the delegation clause of the

11   AAA Rules, were presented on a take-it-or-leave-it basis.  Under *Armendariz*  and

12   *Nagrampa*, this is enough to find procedural unconscionability.  *Armendariz*, 24 Cal. 4th at

13   114-15; *Nagrampa*, 469 F.3d at 1282-83.

14   　　　　However, the level of procedural unconscionability is not so high as to defeat the

15   delegation clause on its own.  By way of example, the Court notes a new case in the

16   Northern District of California, of which Plaintiffs provided notice to the Court: *Saravia v.*

17   *Dynamex, Inc.*, 2015 WL 5821423 (N.D. Cal. Oct. 6, 2015).  In *Saravia*, Judge Alsup

18   denied a motion to compel arbitration in a case involving independent contract

19   misclassification because the delegation clause (and the arbitration clause as a whole) was

20   unconscionable.  *Id.*  In *Saravia*, however, there was a much stronger showing of

21   unconscionability.  The plaintiff was a Spanish speaker who could only read limited

22   English, and the contract provided to him was in English, with no translation provided.  *Id.*

23   at *1.  Also, the "take it or leave it" nature of the contract was more obvious, as the

24   employer gave the contract to the Plaintiff during the middle of the workday, and gestured

25   for him to sign immediately.  *Id.* at *2.  In the case at bar, Plaintiffs were not explicitly

26   pressured to sign immediately, and were in fact given a chance to review the contract at

27   home if they wished.

28   　　　　Thus, the procedural unconscionability in this case does not rise to a high enough

United States District Court
Northern District of California

15

1   level that, under the sliding scale approach, it would render the delegation clause

2   unconscionable without a showing of substantive unconscionability.

3                    **2.        Substantive unconscionability**

4         Plaintiffs also point to four examples of substantive unconscionability: first, a fee-

5   shifting clause; second, the possible application of the AAA Commercial Rules; third, a

6   distant forum; and fourth, a Washington state choice of law clause.  Galen Opp'n to

7   Compel Mot. at 10-13; Cruz Opp'n to Compel Mot. at 4.

8                    *i.        Fee-shifting provision*

9         The fee-shifting provision in both Plaintiffs' contracts provided:

10

11              If any party hereto shall bring a suit, arbitration or take other
                action against the other for relief, declaratory or otherwise,
12              arising out of this Agreement, the prevailing party shall have
                and recover reasonable attorney fees, in addition to all costs
13              and disbursements, against the other party, whether or not a
                lawsuit shall be involved.

14

15         Ex. B to Galen Arena Decl. at 6.  This provision is in a section of the Agreement

16   that is separate from the arbitration provision.  Plaintiffs argue that this provision requires

17   the loser to pay costs even though their California law claims only permit fee-shifting in

18   favor of prevailing plaintiffs or employees.  Galen Opp'n to Compel Mot. at 11.  While

19   this contention is true, and renders the clause unconscionable, the provision may be

20   severed without altering the arbitration provision.  In fact, Redfin's counsel at oral

21   argument conceded that both the fee shifting and choice of law clauses are easily severed

22   from the delegation clause.  *See also* Galen Reply at 11-12.

23                    *ii.        Ambiguity in application of rules*

24         Redfin's counsel argued at oral argument that the ambiguity between the rules is not

25   fatal, and is an issue for the arbitrator to decide.  However, the Court disagrees with this

26   contention.  Because the AAA Commercial Rules would put Plaintiffs at a disadvantage,

27   holding them to the Commercial Rules would make the clause substantively

28   unconscionable because Plaintiffs would have to pay upfront costs.

United States District Court
Northern District of California

16

1   The Court chooses the resolve this ambiguity and eliminate this area of substantive

2   unconscionability by interpreting the contract to mean that the parties will arbitrate their

3   disputes using the AAA Labor and Employment Rules.  Because Redfin's counsel attached

4   the AAA Labor and Employment Rules to its motions, it follows that Redfin intended

5   those rules to apply to the arbitrations.  *See* Ex. H to Arena Decl. at 70 (Galen Docket No.

6   24-2); Ex. B to Arena Decl. at 2 (Cruz Docket No. 19-3).

                            *iii.     Forum selection clause*

8       The Agreement's selection of Seattle as the forum for arbitration is similarly

9   unconscionable, because it would make it significantly harder for the California resident

10  Plaintiffs to litigate their claims.  Similarly to the fee-shifting provision, however, the

11  forum selection provision is easily severable, and Redfin has agreed to conduct the

12  arbitrations in the San Francisco Bay Area.  Arena Decl. at ¶ 10 (Galen Docket No. 24-1);

13  Arena Decl. at ¶ 8 (Cruz Docket No. 19-2).

                            *iv.     Choice of law clause*

15      A choice of law clause may render an arbitration clause unconscionable if its

16  operation would deprive the plaintiff of statutorily protected rights, such as employment

17  benefits.  *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 798-99 (2012); *see also*

18  *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010).  However, absent a reason to

19  conclude that the choice of law provision would have such an effect, the resolution of

20  choice of law issues is for the arbitrator, not the Court, to decide.  *See Vimar Seguros y*

21  *Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 541 (1995).

22      At oral argument, Redfin's counsel argued that the Washington choice of law clause

23  at issue was (1) not per se unconscionable; and (2) not located in the arbitration section of

24  the agreement, so there was ambiguity as to whether Washington law even would apply to

25  the arbitration.  Redfin argues that it is for the arbitrator, not the Court, to decide the

26  threshold question of what law applies.  Galen Mot. to Compel at 8 (Galen Docket No. 24).

27  Regardless, Redfin argues, the clause is easily severed from the agreement.  *Id.* at 9.

28      Both Plaintiffs argue that the Washington choice of law clause deprives Plaintiffs of

United States District Court
Northern District of California

17

1     statutory benefits and claims – most notably being the Private Attorney General Act

2     (PAGA) claims, which are California claims.  Washington law also would deny Plaintiffs

3     other protections that they would have under California law, including waiting time

4     penalties, penalties for inaccurate wage statements, and reimbursement of business related

5     expnses.  Galen Opp'n to Compel Mot. at 23.  Plaintiffs argue that the arbitrator should not

6     be allowed to decide whether the PAGA claim can stand by deciding that the parties

7     agreed to Washington law.  Furthermore, Plaintiffs' counsel argued that under *Iskanian*

8     and *Sakkab*, if the arbitration agreement waives enforcement of a PAGA claim, it is not

9     enforceable as a whole.  *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348

10    (2014); *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015).

11            The Court finds that applying Washington law would have the effect of depriving

12    Plaintiffs of their rights; therefore, the choice of law provision must be severed.  The

13    arbitrator will determine what the parties voluntarily agreed to, but may not do so in a way

14    that would result in waiver of the PAGA claim.  Plaintiffs incorrectly contend that severing

15    the offending provisions would constitute prohibited reformation; rather, severance is the

16    correct remedy where the agreement is not so permeated with unconscionability to render

17    it tainted.  Here, the choice of law clause is easily severed from the agreement.  *Cf. Trivedi*

18    *v. Curexo Tech. Corp.*, 189 Cal. App. 4th 387, 398 (2010) (agreement so permeated with

19    unconscionability that severance would not cure).

20

21            **C.      Redfin's Motions to Compel Arbitration are not Wholly Groundless**

22            Redfin's argument for arbitration is not wholly groundless.  Plaintiffs argue that the

23    arbitration provision does not apply to their misclassification claims, because these claims

24    arise out of statutory rights.  Galen Opp'n at 14; Cruz Opp'n at 4-5.  However, this Court

25    considered, and rejected, precisely this argument in a recent case, because the "wholly

26    groundless" standard is so low.  *Zenelaj*, 2015 WL 971320, at *6.

27            The arbitration provision at issue here applies to "any disputes . . . regarding the

28    interpretation or enforcement of [the] Agreement," so long as the disputes are "arising out

United States District Court
Northern District of California

1   of or related to [the] Agreement . . . ." Ex. B to Galen Arena Decl. at 6.  This is sufficient

2   to find that Redfin's argument is not wholly groundless.  The Agreement defined the

3   relationship between the parties, and it is the interpretation of that relationship that will be

4   at issue in the dispute.  Thus, Redfin's argument on this point is not wholly groundless,

5   and the question of arbitrability is therefore delegated to the arbitrator.

6

7   **CONCLUSION**

8       For the reasons stated above, the Court rules as follows:

9       1.  Galen's motion to enforce the law of the case is DENIED due to the procedural

10  posture of the case and the changed circumstances following the Superior Court's decision.

11      2.  Redfin's motions to compel arbitration are GRANTED in both cases because the

12  parties clearly and unmistakably delegated the question of arbitrability to the arbitrator,

13  any unconscionable provisions regarding that delegation are severable, and Refin's motion

14  to compel is not wholly groundless.  The Court therefore severs the Agreements' fee-

15  shifting, forum selection, and choice of law clauses.  The question of arbitrability is

16  delegated to an arbitrator in the San Francisco Bay Area applying the 2009 era AAA Labor

17  and Employment Rules.

18      3.  The parties shall file a joint statement within ten days of the arbitrator's decision

19  on arbitrability, or by **March 7, 2016**, whichever is sooner.

20

21  **IT IS SO ORDERED.**

22

23  Dated:   12/01/15                                  _____

24                                                                        THELTON E. HENDERSON
                                                                           United States District Judge

25

26

27

28

19

*United States District Court*
*Northern District of California*